UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:<br><br>CUKER INTERACTIVE, LLC,<br><br>Debtor.<br><br>PILLSBURY WINTHROP SHAW PITTMAN, LLP,<br>Appellant,<br>v.<br>CUKER INTERACTIVE, LLC,<br>Appellee. | Case No.: 20-CV-01882-CAB-BLM<br><br>**ORDER REVERSING BANKRUPTCY COURT** |

In this matter, Appellant Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury") appeals a September 17, 2020 order by the United States Bankruptcy Court for the Southern District of California granting a motion for summary judgment by Debtor and Appellee Cuker Interactive, LLC ("Cuker") in an adversary proceeding seeking declaratory relief concerning the validity and extent of a lien by Pillsbury. The appeal has been fully briefed,

and the Court held oral argument. As discussed below, the bankruptcy court's grant of judgment in favor of Cuker is reversed.

### I.     Background

Pillsbury represented Cuker in litigation against Walmart in Arkansas federal court. After a jury trial, the Arkansas District Court entered judgment in favor of Cuker for $745,021 in damages and $2,664,262.44 in attorney's fees and sanctions. On December 8, 2017, while the litigation was ongoing, Pillsbury sent a letter to counsel for Walmart providing notice that Cuker owed Pillsbury money for its services in the Walmart lawsuit and purporting to assert an attorney's lien under Arkansas law on amounts owed by Walmart to Cuker in the lawsuit. [Doc. No. 20-1 at 13.][1]

On December 13, 2018, Cuker filed for Chapter 11 bankruptcy in this district. Pillsbury filed a proof of claim asserting a claim for $1,637,418.71 secured by an attorney's lien on the judgment and proceeds of the Walmart lawsuit and perfected by the December 8, 2017 letter to Walmart's counsel. [Doc. No. 20-1 at 10-12.] On May 29, 2020, Cuker filed an adversary proceeding against Pillsbury to determine whether Pillsbury's claim is secured or unsecured. [Doc. No. 20-1 at 5-8.] In a motion for summary judgment filed shortly thereafter, Cuker asked the bankruptcy court to determine as a matter of law that Pillsbury's claim is a general unsecured claim not entitled to priority. [Doc. No. 20-1 at 21.]

Pillsbury filed a petition to compel arbitration of the adversary proceeding based on an arbitration provision in Pillsbury's engagement letter with Cuker. [Doc. No. 19-1 at 53; Doc. No. 21-1 at 3.] The bankruptcy court denied Pillsbury's petition, and on September 18, 2020, Pillsbury filed a notice of appeal of that ruling and a statement of election to have the appeal heard in the district court. [Doc. No. 1.] This Court affirmed the bankruptcy court's ruling. *See* Doc. No. 24 in S.D.Cal. Case No. 18cv1854-CAB-BLM.

---

[1] Citations to the record use the ECF watermark for the instant appeal.

After determining that it had jurisdiction to decide Cuker's adversary proceeding, the bankruptcy court granted Cuker's motion for summary judgment, holding that: (1) California law governed the validity of Pillsbury's lien; and (2) Pillsbury did not have a valid lien under California law, meaning its claim is unsecured. On September 22, 2020, Pillsbury filed a notice of appeal of that ruling and a statement of election to have the appeal heard in the district court. [Doc. No. 1.]

## II.     Standard of Review

"When considering an appeal from the bankruptcy court, a district court applies the same standard of review that a circuit court would use in reviewing a decision of a district court." *Ho v. Wirum*, No. 19-CV-02095-RS, 2019 WL 8263439, at *1 (N.D. Cal. Dec. 11, 2019) (citing *Ford v. Baroff (In re Baroff)*, 105 F.3d 439, 441 (9th Cir. 1997)). A "Bankruptcy Court's decision granting summary judgment is reviewed . . . de novo." *In re Del Biaggio*, No. 12-CV-6447 YGR, 2013 WL 6073367, at *3 (N.D. Cal. Nov. 18, 2013) (citing *In re Caneva*, 550 F.3d 755, 760 (9th Cir. 2008)).

## III.    Discussion

Here, as the bankruptcy court found, the parties' dispute "is not factual, but rather requires an analysis of whether California law or Arkansas law applies" to the determination of whether Pillsbury holds a valid lien for attorney's fees. [Doc. No. 20-1 at 89.] As stated above, the bankruptcy court held that California law applies, and that Pillsbury does not have a valid lien under California law. In this appeal, Pillsbury argues only that Arkansas law, and not California law, applies and that Pillsbury's lien is valid under Arkansas law. Pillsbury does not argue that it has a valid lien under California law.

### A.     Choice of Law – California or Arkansas

The parties do not dispute that federal choice of law principles apply in bankruptcy court proceedings and "[f]ederal choice of law rules follow the approach of the Restatement (Second) of Conflict of Laws." *In re Vortex Fishing Sys., Inc.*, 277 F.3d 1057, 1069 (9th Cir. 2002). The parties do dispute, however, which section of the Restatement applies, with Cuker arguing section 188 applies and Pillsbury arguing section 251 applies. The

bankruptcy court found this dispute irrelevant because both sections reference the principles of section 6 of the Restatement. This court respectfully disagrees with that conclusion.

Section 188 concerns the law governing "the rights and duties of the parties with respect to an issue in contract." Restatement (Second) of Conflict of Laws § 188 (1971). An issue in contract is not at issue in this adversary proceeding. The only issue is the validity of Pillsbury's statutory lien. Cuker argues that the parties' relationship is "anchored in a written contract," specifically Cuker's engagement agreement with Pillsbury. [Doc. No. 21 at 17.] The parties' rights and duties under the engagement agreement, however, are not at issue here. Indeed, the complaint in Cuker's adversary proceeding expressly states as much. [*Id.* at 6.] The only issue is the validity of Pillsbury's lien, and as the bankruptcy court held, this dispute "does not have its origins or genesis in the Engagement Agreement," and "there is no significant relationship, or any relationship for that matter, between the fee lien dispute and the Engagement Agreement." [*Id.* at 94.] Accordingly, section 188 plainly does not apply here.

Section 251, meanwhile, concerns the "validity and effect of a security interest in chattel," and comment "f" to the section states that it applies to non-consensual liens, including "an attorney's lien." Restatement (Second) of Conflict of Laws § 251 (1971). The complaint in Cuker's adversary proceeding states that it seeks a determination of the validity of Pillsbury's (i.e., Cuker's former attorneys') lien on property of Cuker's estate. [Doc. No. 20-1 at 6.] Accordingly, section 251 applies here.

Section 251 states:

(1) The validity and effect of a security interest in a chattel as between the immediate parties are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the parties, the chattel and the security interest under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties, greater weight will usually be given to the location of the chattel at the time that the security interest attached than to any other contact in determining the state of the applicable law.

Restatement (Second) of Conflict of Laws § 251 (1971). While the bankruptcy court was correct that the principles in section 6 are relevant, in finding it immaterial whether section 188 or section 251 applied, the bankruptcy court ignored subsection (2), which advises that the location of the chattel is entitled to the greatest weight. Here, the chattel in question was, at the time of the lien, money held by Walmart and payable pursuant to a judgment entered by an Arkansas federal court. Based on subsection (2), Arkansas law applies to Pillsbury's lien.

The bankruptcy court discounted the importance of the location of the chattel, holding that the place of the chattel is less relevant when its location is temporary.[2] Instead, the bankruptcy court stated that whether California or Arkansas law applied is governed solely by the factors in section 6 of the Restatement, which include:

    (a) the needs of the interstate and international systems,

    (b) the relevant policies of the forum,

    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

    (d) the protection of justified expectations,

    (e) the basic policies underlying the particular field of law,

    (f) certainty, predictability and uniformity of result, and

    (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971). The bankruptcy court stated without explanation that not all of these factors are relevant here, and then relying on factors (b) and (c), held that California law applies because "Pillsbury's attorneys, who represented Plaintiff, are licensed in California; Cuker is a California company, and the parties' Engagement Agreement was entered into in California." [Doc. No. 20-1 at 101.]

The bankruptcy court's reliance on where the Engagement Agreement was executed, however, is inconsistent with its (correct) holding that there is no relationship between this

---

[2] The Court disagrees with this premise, but even using the section 6 factors on which the bankruptcy court relied, Arkansas law applies.

fee lien dispute and the engagement agreement. Moreover, its conclusion that "it is too great a leap to presume that Cuker might have predicted or expected Arkansas law to govern this aspect of its relationship with Pillsbury's California attorneys" [Doc. No. 20-1 at 101], is belied by the Engagement Agreement's express statement that Cuker was retaining Pillsbury for the Walmart litigation pending in Arkansas [Doc. No. 21-1 at 4].

Ultimately, a de novo review of the section 6 factors also supports applying Arkansas law to the lien dispute here. Arkansas's interests exceed those of California's with respect to an attorney's lien on a judgment issued by an Arkansas court, payable by a company with its principal place of business in Arkansas, based on fees incurred in connection with litigation that took place in Arkansas. Cuker (and Walmart) should have expected that liens on a judgment in an Arkansas litigation would be governed by Arkansas law. Further, the basic policies underlying the perfection of liens, predictability and uniformity of result, and ease of determination of the applicable law all support applying Arkansas law to a lien on a judgment issued by an Arkansas court for unpaid attorney's fees incurred in an Arkansas litigation. This conclusion is consistent with "[t]he generally accepted view [] that the existence and effect of an attorney's lien is governed by the law of the place in which the contract between the attorney and the client is to be performed, that is, in which a contemplated action or proceeding is to be instituted, and that the place of contracting is immaterial where the contract contemplates the institution of an action in another jurisdiction." 59 A.L.R.2d 564. Accordingly, even assuming, as did the bankruptcy court, that whether section 188 or section 251 of the Restatement is irrelevant, Arkansas law applies to this Pillsbury's lien.

### B.     Application of Arkansas Law to Pillsbury's Lien

"In order to perfect an attorney's lien in Arkansas, an attorney must follow the procedure set out in Ark.Code Ann. § 16–22–304. . . ." *Mack v. Brazil, Adlong & Winningham, PLC*, 159 S.W.3d 291, 294 (Ark. 2004). That section states:

16–22–304. Lien of attorney created.

> (a)(1) From and after service upon the adverse party of a written notice signed by the client and by the attorney at law, solicitor, or counselor representing the client, which notice is to be served by certified mail and a return receipt being required to establish actual delivery of the notice, the attorney at law, solicitor, or counselor serving the notice upon the adversary party shall have a lien upon his or her client's cause of action, claim, or counterclaim, which attaches to any settlement, verdict, report, decision, judgment, or final order in his or her client's favor, and the proceeds thereof in whosoever's hands they may come.
>
> (2) The lien cannot be defeated and impaired by any subsequent negotiation or compromise by any parties litigant.
>
> (3) However, the lien shall apply only to the cause or causes of action specifically enumerated in the notice.

Ark. Code Ann. § 16–22–304 (West). "[S]trict compliance with the attorney's lien statute is not required and substantial compliance will suffice." *Mack*, 159 S.W.3d at 295. "[T]he intent and purpose of the statute [is] to make sure . . . that [the attorney] represented [the client] and that [the adverse party] would be aware of [the attorney's] intention to claim a lien, for his fee, on the proceeds of the litigation before they were paid to the client . . . ." *Metro. Life Ins. Co. v. Roberts*, 411 S.W.2d 299, 300 (Ark. 1967).

      Here, Pillsbury provided written notice of its lien by certified mail with return receipt to Walmart's counsel. [Doc. No. 20-1 at 13-17.] Walmart's counsel knew that Pillsbury represented Cuker in the litigation between Cuker and Walmart and confirmed receipt of the notice of Pillsbury's intention to create a lien. [*Id.* at 18.] Cuker, however, claims that this notice was insufficient to create a lien because it was not signed by Cuker. The Court is not persuaded. "[T]here is no question that [Walmart] had actual notice of the asserted lien before any settlement money was paid to [Cuker]." *Mack*, 159 S.W.3d at 296. Pursuant to *Metropolitan Life*, Pillsbury was therefore in substantial compliance with the statute and the fact that Cuker did not sign the notice is not fatal. *See Metro. Life Ins. Co.*, 411 S.W.2d at 300 ("[I]t is appellant's sole contention that the notice given by appellee in his letter . . . was not signed by the client. . . . It is true that [the client] did not sign the

notice, but we cannot agree that this omission is fatal.")  Accordingly, Pillsbury's lien is valid under Arkansas law.

### IV.    Conclusion

For the foregoing reasons,  the Court **REVERSES** the bankruptcy court's decision that Pillsbury's claim is unsecured, and **REMANDS** this matter to the bankruptcy court for further proceedings consistent with this order.

It is **SO ORDERED.**

Dated:  March 25, 2021

_____
Hon. Cathy Ann Bencivengo
United States District Judge